**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____


AMERIGAS PROPANE, INC., a Pennsylvania corporation

     Plaintiffs,

v.

THOMAS MCBRAYER, an individual; and ROARING FORK VALLEY CO-OP
ASSOCIATION, a Colorado cooperative

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

     Plaintiffs, AmeriGas Propane Inc., by their attorneys, Hall & Evans, L.L.C. and
Reed Smith LLP, for its Complaint against Defendants, Thomas McBrayer and Roaring
Fork Valley Co-op Association, states as follows:

**<u>PARTIES, JURISDICTION, VENUE</u>**

     1.    Plaintiff, AmeriGas Propane, Inc. ("Amerigas") is a foreign corporation
authorized to transact business in the State of Colorado with its principal place of business
in Valley Forge, Pennsylvania.  AmeriGas Propane, Inc. is in the business of selling
propane and propane related products and services.  AmeriGas Propane, Inc. provides
services to its customers through its employees who work from its offices throughout the
country, including serving thousands of customers throughout Colorado.

     2.    On information and belief, Defendant, Thomas McBrayer ("McBrayer"), is a
resident of Carbondale, Colorado located in Garfield County. McBrayer is a former
AmeriGas employee who is subject to a Confidentiality and Post-Employment Agreement

("Post-Employment Agreement") with AmeriGas. McBrayer is presently employed by Roaring Fork Valley Co-op Association ("Roaring Fork").

3.      On information and belief, Defendant, Roaring Fork is a cooperative that conducts business selling propane and propane related products in the State of Colorado as "Roaring Fork Valley Co-op Association" with its primary place of business located at 760 Highway 133, Carbondale, CO 81623.

4.      This Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the Plaintiffs and Defendants. Additionally, the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is appropriate in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

**A.      McBrayer's solicitation of AmeriGas' customers violated his Post-Employment and Confidentiality Agreement.**

6.      On April 23, 2015, AmeriGas Propane, L.P.,[1] purchased Cross Propane Gas & Supply, Inc. ("Cross Propane") and related companies, including Rocky Mountain Propane Express, Inc., and Janco Real Estate Holdings, LLC.

7.      Prior to AmeriGas' purchase of Cross Propane, McBrayer was the Chief Financial Officer and General Manager of Cross Propane.

8.      After the acquisition, McBrayer accepted a position in management at AmeriGas as the District Manager of AmeriGas' Glenwood Springs, Colorado branch.

9.      As a District Manager at AmeriGas, McBrayer supervised numerous employees.

---

[1] AmeriGas Propane L.P. is a Delaware limited partnership and is the limited partner of AmeriGas Propane, Inc.

10.     As a condition of McBrayer's employment with AmeriGas, on April 23, 2015, McBrayer signed the Post-Employment Agreement.  A true and accurate copy of the Post-Employment Agreement is attached as Exhibit 1.

11.     In the Post-Employment Agreement, as a member of AmeriGas' management, McBrayer acknowledged, among other things:

> During the course of [his] employment, AmeriGas will put [him] in a position of trust and confidence by disclosing to [him] Confidential Information about its business and customers. In addition, AmeriGas will entrust [him] with its customer relationships and expect [him] to promote those relationships, as well as the goodwill that is associated with those customers and with the AmeriGas trade name/trademarks.

*See* Exhibit 1, p. 1.

12.     In further consideration for his employment with AmeriGas, as a member of AmeriGas' management, McBrayer agreed for a period of two (2) years after his termination of employment with AmeriGas that:

> a. [He] will not directly or indirectly solicit the business of any AmeriGas Customer. The term "AmeriGas Customer" is defined as any customer which is located within a fifty aerial mile radius of any AmeriGas District Office where [he] worked during the two-year period prior to the termination of [his] employment, and which has purchased products or services from AmeriGas during that two-year period.
>
> b. [He] will not directly or indirectly sell or provide propane or any other goods or services sold or provided by AmeriGas as of the date of the termination of [his] employment to any AmeriGas Customer who is located within a fifty mile aerial radius of any AmeriGas District Office where [he] worked during the two-year period prior to the termination of [his] employment . . . .

*See* Exhibit 1, at p. 1.

13.    Furthermore, the Post-Employment Agreement required McBrayer to disclose to McBrayer's employers[2] the existence of the Post-Employment Agreement with AmeriGas. *See* Exhibit 1, at p. 2.

14.    The Post-Employment Agreement also authorized AmeriGas to disclose the existence of the Post-Employment Agreement and to provide a copy of the Agreement to any of McBrayer's prospective or actual employers. *See* Exhibit 1, at p. 2.

15.    Upon information and belief, while still employed by AmeriGas as its District Manager, McBrayer communicated with Roaring Fork about the possibility of McBrayer starting a propane distribution division at Roaring Fork.

16.    McBrayer resigned from AmeriGas on or about July 22, 2015.

17.    McBrayer accepted a position with Roaring Fork as an Energy Manager.

18.    After McBrayer's departure from AmeriGas, McBrayer, on behalf of Roaring Fork, has directly and indirectly solicited business from and/or is directly or indirectly soliciting business from AmeriGas' customers in violation of McBrayer's Post-Employment Agreement.

19.    McBrayer's solicitation of AmeriGas' customers has occurred prior to the expiration of the two-year period after McBrayer's termination of employment in violation of McBrayer's Post-Employment Agreement.

20.    On October 30, 2015, AmeriGas sent McBrayer and Roaring Fork a letter with McBrayer's Post-Employment Agreement enclosed.  The letter reminded McBrayer and notified Roaring Fork of McBrayer's obligations under the Post-Employment Agreement and specifically stated that McBrayer could not divulge confidential AmeriGas

---

[2] McBrayer was required to disclose the Post-Employment Agreement with all of McBrayer's employers for a two year period commencing on the date of McBrayer's termination of employment with AmeriGas.

information to anyone or solicit or service any of AmeriGas' customers within a fifty (50) mile radius of AmeriGas' Glenwood Springs district.  The letter also reminded McBrayer and notified Roaring Fork that McBrayer could not induce AmeriGas employees from terminating their employment with AmeriGas.  A true and accurate copy of the October 30, 2015 letter is attached and marked as Exhibit 2.

21.     Despite AmeriGas' request to McBrayer, he continues to solicit business from AmeriGas' customers.

22.     AmeriGas has expended effort, time, and money to develop and maintain its relationships with its customers.

23.     As an employee, McBrayer had access to, among other things, AmeriGas' trade secrets, including, expirations, lists of clients, and client contact information.  As an employee, McBrayer assumed fiduciary obligations to AmeriGas.

24.     McBrayer's and Roaring Fork's plan was orchestrated to obtain AmeriGas' trade secrets for self-gain and to obtain an unfair advantage over AmeriGas on the Western Slope.

25.     As a District Manager for AmeriGas, McBrayer had access to AmeriGas customer information, including pricing and service information that allowed McBrayer and Roaring Fork to improperly interfere with AmeriGas' customer relationships.

26.     To date, AmeriGas has lost multiple customers to Roaring Fork, on information and belief as a result of McBrayer's and Roaring Fork's improper conduct.

**B.     McBrayer's inducement of Christopher Bernat to leave AmeriGas for Roaring Fork violated his Post-Employment Agreement.**

27.     As further consideration of McBrayer's employment with AmeriGas, McBrayer agreed for a period of two (2) years after his termination of employment with AmeriGas that:

> a.  [He] will not employ, offer employment or induce or encourage any other person or entity to employ in any propane-related business, any employee of AmeriGas with whom [he] worked or who was employed at any AmeriGas District Office where [he] worked during the last two-year period prior to the termination of [his] employment. Furthermore, [he] shall not induce or attempt to induce any employee to terminate his or her employment with AmeriGas.

*See* Exhibit 1, at p. 2.

28.     Christopher Bernat ("Bernat"), an AmeriGas Service Manager, worked out of AmeriGas' Glenwood Springs, Colorado district at the same time as McBrayer.

29.     On information and belief, after McBrayer's resignation from AmeriGas, McBrayer began to solicit Bernat to resign from AmeriGas and join McBrayer at Roaring Fork.

30.     Because of McBrayer's solicitation in violation of McBrayer's Post-Employment Agreement, Bernat ultimately resigned from AmeriGas on or about December 4, 2015 and accepted a position with Roaring Fork.

31.     By virtue of the October 30, 2015 letter AmeriGas sent to Roaring Fork, Roaring Fork was aware of McBrayer's contractual duty to not solicit or induce AmeriGas employees to leave AmeriGas.

32.     Nonetheless, Roaring Fork allowed McBrayer to induce Bernat to leave AmeriGas and to accept a position with Roaring Fork.

## COUNT I
**(Request for Preliminary and Permanent Injunction against McBrayer)**

33.     AmeriGas incorporates and re-alleges paragraphs 1 through 32 with the same force and effect as if fully repeated herein.

34.     AmeriGas seeks to enforce the terms applicable to McBrayer under his Post-Employment Agreement.

35.     Based on the conduct set forth herein, AmeriGas seeks a Preliminary and Permanent Injunction against McBrayer for violating his Post-Employment Agreement and therefore enjoining him from: (1) directly or indirectly soliciting the business of any AmeriGas customer within a fifty (50) miles aerial radius from Glenwood Springs, Colorado or any AmeriGas District Office where McBrayer worked during the two-year period prior to his resignation; (2) directly or indirectly selling or providing propane or any other goods or services sold or provided by AmeriGas to any AmeriGas Customer within a fifty (50) mile aerial radius of any AmeriGas District Office where McBrayer worked including but not limited to Glenwood Springs, Colorado; and (3) inducing AmeriGas employees to terminate their employment with AmeriGas.

36.     AmeriGas has a reasonable probability of prevailing on the claims herein against McBrayer.

37.     McBrayer's conduct, including but not limited to his direct and indirect solicitation of AmeriGas customers; direct and indirect sales to AmeriGas customers; and inducement of AmeriGas employees to terminate their employment with AmeriGas will cause irreparable injury in that the established relationship that AmeriGas has with these customers and its employees is imperiled.

38.     Injunctive relief is necessary to prevent further immediate and irreparable injury to AmeriGas.

39.     AmeriGas does not have an adequate remedy at law because the injuries that it has and will continue to sustain as a result of McBrayer's wrongful conduct cannot be calculated with a reasonable degree of certainty.

40.     The enforcement of an injunction against McBrayer will not disserve the public interest.

41.     Any possible harm to McBrayer by granting a Preliminary and then Permanent Injunction would be outweighed by the harm suffered by AmeriGas if no injunction were granted.

42.     Granting a Preliminary Injunction against McBrayer will preserve the status quo of the relationship between all the affected parties pending a trial on the merits.

43.     Pursuant to the terms of the Post-Employment Agreement, McBrayer agreed that AmeriGas would suffer irreparable harm and would thereby be entitled to seek and obtain an injunction if he violated the Post-Employment Agreement. *See* Exhibit 1, at p. 2.

44.     Pursuant to the terms of the Post-Employment Agreement, AmeriGas is entitled to its costs and expenses, including attorney fees and filing costs in seeking this injunction against McBrayer. *See* Exhibit 1, at p. 2.

AmeriGas respectfully requests this Court to enter judgment in its favor against McBrayer, to award reasonable costs and expenses, including attorney fees and to grant

AmeriGas' Request for a Preliminary and Permanent Injunction[3] enjoining and restraining McBrayer from:

    a. Directly or indirectly soliciting the business of any AmeriGas customer, as defined by the Post-Employment Agreement, located within a fifty (50) mile aerial radius from Glenwood Springs, Colorado or any AmeriGas District Office where McBrayer worked during the two-year period prior to his resignation;

    b. Directly or indirectly selling or providing propane or any other goods or services sold or provided by AmeriGas to any AmeriGas customer, as defined by the Post-Employment Agreement, located within a fifty (50) mile aerial radius from any AmeriGas District Office where McBrayer worked including but not limited to Glenwood Springs, Colorado;

    c. Soliciting and inducing AmeriGas' employees to terminate their employment with AmeriGas; and

    d. Otherwise violating the terms of the Post-Employment Agreement.

## COUNT II
### (Request for Preliminary and Permanent Injunction against Roaring Fork)

45.    AmeriGas incorporates and re-alleges paragraphs 1 through 44 with the same force and effect as if fully repeated herein.

46.    AmeriGas seeks to restrict Roaring Fork from gaining an unfair advantage from inducing, assisting, supporting, or allowing McBrayer to violate his Post-Employment Agreement.

47.    Based on the conduct set forth herein, AmeriGas seeks a Preliminary and Permanent Injunction against Roaring Fork for tortiously interfering with the Post-Employment Agreement between McBrayer and AmeriGas, and, therefore, enjoining Roaring Fork from interfering with the contract and/or allowing, inducing, assisting, or

---

[3] Which shall extend for a period equal to the period during which McBrayer's breach and violation of the Post-Employment Agreement was occurring and had not been fully and finally cured.

supporting McBrayer's violation of his Post-Employment Agreement and prohibiting Roaring Fork from soliciting or selling to AmeriGas's customers either directly or indirectly through McBrayer in violation of his Post-Employment Agreement.

48.     AmeriGas has a reasonable probability of prevailing on the claims herein against Roaring Fork.

49.     Roaring Forks' direct and indirect solicitation of AmeriGas customers through McBrayer; direct and indirect sales to AmeriGas customers through McBrayer; and inducement of AmeriGas employees to terminate their employment with AmeriGas through McBrayer will cause irreparable injury in that the established relationship that AmeriGas has with these customers and its employees is imperiled.

50.     Injunctive relief may prevent the danger of AmeriGas' immediate and irreparable injury.

51.     AmeriGas does not have an adequate remedy at law because the injuries that it will sustain as a result of Roaring Fork's conduct cannot be calculated with a reasonable degree of certainty.

52.     The enforcement of an injunction against Roaring Fork will not disserve the public interest.

53.     Any possible harm to Roaring Fork by granting a Preliminary and then Permanent Injunction would be outweighed by the harm suffered by AmeriGas if no injunction were granted.

54.     Granting a Preliminary Injunction against Roaring Fork will preserve the status quo of the relationship between all the affected parties pending a trial on the merits.

AmeriGas respectfully requests this Court to enter judgment in its favor against Roaring Fork, to award reasonable costs and expenses, including attorney fees and to grant AmeriGas' Request for a Preliminary and Permanent Injunction[4] enjoining and restraining Roaring Fork from:

   a.  Interfering with the Post-Employment Agreement between McBrayer and AmeriGas;

   b.  Allowing, inducing, assisting, or supporting McBrayer's violation of the Post-Employment Agreement and soliciting or selling to AmeriGas customers either directly or indirectly through McBrayer pursuant to the scope of restrictions defined in the Post-Employment Agreement;

   c.  Allowing, inducing, assisting, or supporting McBrayer's violation of the Post-Employment Agreement and by soliciting and inducing AmeriGas' employees to terminate their employment with AmeriGas; and

   d.  Otherwise allowing, inducing, assisting, or supporting McBrayer's violation of the Post-Employment Agreement.

## <u>COUNT III</u>
### (Breach of Contract against McBrayer)

55.     AmeriGas incorporates and re-alleges paragraphs 1 through 54 with the same force and effect as if fully repeated herein.

56.     The Post-Employment Agreement is a valid and enforceable contract between AmeriGas and McBrayer.

57.     By executing the Post-Employment Agreement, McBrayer acknowledged that he was, from July 22, 2015 until July 22, 2017: (1) prevented from soliciting business from AmeriGas customers within geographic scope restrictions; (2) prevented from selling or providing propane or any other goods or services sold or provided by AmeriGas within

---

[4] Which shall extend for a period equal to the period during which McBrayer's breach and violation of the Post-Employment Agreement was occurring and had not been fully and finally cured.

geographic scope restrictions; and (3) prevented from soliciting and inducing AmeriGas employees from terminating their employment with AmeriGas.

58.     At all times, AmeriGas fully performed its obligations under the Post-Employment Agreement.

59.     McBrayer breached the Post-Employment Agreement when he solicited and sold propane products to AmeriGas customers and induced Bernat to terminate his employment with AmeriGas.

60.     McBrayer's solicitation and sale of propane products to the AmeriGas customers and his inducement of Bernat occurred prior to July 22, 2017 and was is in direct violation of his obligations under his Post-Employment Agreement.

61.     AmeriGas seeks an award of damages to the extent McBrayer has already caused damages in an amount that is ascertainable and determinable.

62.     Under the Post-Employment Agreement, AmeriGas is entitled to recover its costs and reasonable attorney fees in any legal proceeding in which AmeriGas obtains injunctive or equitable relief or damages against McBrayer arising out of his violation of the Post-Employment Agreement. *See* Exhibit 1, at p. 2.

AmeriGas respectfully requests the Court to enter judgment in its favor and against McBrayer, to enter an order granting AmeriGas' Request for a Preliminary and Permanent Injunction as requested under Count I, to award economic damages against McBrayer, to award restitution in the form of disgorgement against McBrayer, to award AmeriGas its costs and reasonable attorney fees incurred in this action and for all other relief that this Court deems just and proper.

## COUNT IV
**(Intentional Interference with Contractual Relations against Roaring Fork)**

63.     AmeriGas incorporates and re-alleges paragraphs 1 through 62 with the same force and effect as if fully repeated herein.

64.     As a result of the October 30, 2015 letter that AmeriGas sent to Roaring Fork, Roaring Fork was aware of the existence of the Post-Employment Agreement between McBrayer and AmeriGas.

65.     Furthermore, because the October 30, 2015 letter contained a copy of the Post-Employment Agreement, Roaring Fork was aware that McBrayer was contractually prohibited from July 22, 2015 to July 22, 2017, from: (1) soliciting business from AmeriGas customers within geographic scope restrictions; (2) selling or providing propane or any other goods or services sold or provided by AmeriGas within geographic scope restrictions; and (3) soliciting and inducing AmeriGas employees from terminating their employment with AmeriGas.

66.     Roaring Fork intentionally interfered with the Post-Employment Agreement between AmeriGas and McBrayer when: (1) Roaring Fork was complicit with and approved of McBrayer's solicitation and sale of propane products to AmeriGas customers; and (2) Roaring Fork permitted McBrayer to solicit Bernat to resign from AmeriGas so he could work for Roaring Fork.

67.     AmeriGas has been damaged by Roaring Fork's illegal conduct.

AmeriGas respectfully requests the Court to enter judgment in its favor and against Roaring Fork, to enter an order granting AmeriGas' Request for a Preliminary and Permanent Injunction as requested under Count II, to award damages and restitution by

way of disgorgement against Roaring Fork, to award AmeriGas its costs and attorney fees incurred in this action, and for all other relief that this Court deems just and proper.

### COUNT V
**(Intentional Interference with Contractual Relations against McBrayer)**

68.     AmeriGas incorporates and re-alleges paragraphs 1 through 67 with the same force and effect as if fully repeated herein.

69.     As a result of the October 30, 2015 letter that AmeriGas sent to McBrayer, among other things, McBrayer was aware of the existence of the Post-Employment Agreement.

70.     Furthermore, because the October 30, 2015 letter contained a copy of the Post-Employment Agreement, McBrayer was aware he was contractually prohibited from July 22, 2015 to July 22, 2017, from: (1) soliciting business from AmeriGas customers within geographic scope restrictions; (2) selling or providing propane or any other goods or services sold or provided by AmeriGas within geographic scope restrictions; and (3) soliciting and inducing AmeriGas employees from terminating their employment with AmeriGas.

71.     McBrayer intentionally interfered with AmeriGas customer contracts and AmeriGas employment contracts when: (1) he solicited and sold propane products to AmeriGas customers; and (2) he solicited Bernat to resign from AmeriGas so he could work for Roaring Fork.

72.     AmeriGas has been damaged by McBrayer's illegal conduct.

AmeriGas respectfully requests the Court to enter judgment in its favor and against McBrayer, to enter an order granting AmeriGas' Request for a Preliminary and Permanent Injunction as requested under Count II, to award damages and restitution by way of

disgorgement against McBrayer, to award AmeriGas its costs and attorney fees incurred in this action, and for all other relief that this Court deems just and proper.

## COUNT VI
### (Breach of Fiduciary Duty – McBrayer)

73.    AmeriGas incorporates by reference the allegations contained in paragraphs 1 through 72 with the same force and effect as if fully repeated herein.

74.    As an employee of AmeriGas, McBrayer had a fiduciary duty to AmeriGas not to improperly use or disclose, among other things, AmeriGas' trade secrets or to engage in self-dealing and other related misconduct set forth in this Complaint.

75.    McBrayer breached his fiduciary obligations to AmeriGas.

76.    AmeriGas has been damaged by McBrayer's breaches of his fiduciary obligations.

77.    AmeriGas is entitled to a return from McBrayer of amounts paid to him during the time he was in breach of his fiduciary obligations to AmeriGas or profits realized by McBrayer during same.

AmeriGas requests that it be awarded damages in an amount to be proven at trial, including but not limited to, lost business and profits, pre-judgment interest, payments to AmeriGas during the time periods he was in breach of his fiduciary duties, and such other and further relief as this Court deems proper.

## COUNT VII
### (Violation of Colorado Trade Secrets Act – Defendants)

78.    AmeriGas incorporates by reference the allegations contained in paragraphs 1 through 77.

79.    The Confidential Information mentioned above constitute "trade secrets" of AmeriGas within the meaning of C.R.S. § 7-74-102.  The Confidential Information is proprietary information of AmeriGas and is maintained in a manner consistent with its confidential nature.

80.    The Confidential Information was misappropriated by Defendants. AmeriGas has been damaged by the misappropriation of its Confidential Information by Defendants.

81.    The Defendants misappropriation of AmeriGas' Confidential Information was performed with willful and wanton disregard of AmeriGas' rights and feelings.

82.    AmeriGas is entitled to reasonable attorney fees in connection with this action, pursuant to C.R.S. § 7-74-105.

83.    This action has been commenced within three years after the discovery of the misappropriation referenced above.

AmeriGas requests that it be awarded damages in an amount to be proven at trial, consisting of moratory interest, exemplary damages pursuant to C.R.S. § 7-74-104, pre-judgment interest, attorney fees pursuant to C.R.S. § 7-74-105, a permanent injunction against further misappropriation of trade secrets, and such other and further relief as this Court deems proper.

## COUNT VIII
### (Civil Conspiracy – Defendants)

84.    AmeriGas incorporates by reference the allegations contained in paragraphs 1 through 83.

85.    Upon information and belief, Defendants agreed, by words or conduct, to misappropriate and wrongfully deprive AmeriGas of its trade secrets in order to improperly acquire AmeriGas' clients.

86.    To accomplish their conspiratorial goals, Defendants wrongfully participated in or acquiesced and assented to the conversion and misappropriation of AmeriGas' trade secrets to the detriment of AmeriGas.

87.    Additionally, among other actions alleged in this Complaint, Defendants participated in the solicitation of AmeriGas' clients for the non-renewal, cancellation and termination of business relationships.   The wrongful activities by Defendants were undertaken during and after McBrayer's employment with AmeriGas.

88.    The Defendants' conduct has been, and continues to be, performed in disregard for AmeriGas' rights.

89.    As a direct and proximate result of Defendants' wrongful conduct, AmeriGas has, and will continue, to incur injuries, damages, and losses as described above.

AmeriGas requests that it be awarded damages in an amount to be proven at trial, including but not limited to, lost business and profits, pre-judgment interest, and such other and further relief as this Court deems proper.

## COUNT IX
### (Unjust Enrichment – Defendants)

90.    AmeriGas incorporates by reference the allegations contained in paragraphs 1 through 89.

91.    Defendants have wrongfully taken AmeriGas's trade secrets and other confidential and proprietary information from AmeriGas in violation of Colorado's Trade Secrets Act and the Post-Employment Agreement.

92      By virtue of McBrayer's employment with AmeriGas, McBrayer had access to AmeriGas' trade secrets and other confidential information.  As a result, AmeriGas conferred a benefit on McBrayer.  For the same reasons, Roaring Fork was conferred a benefit.

93.     By taking AmeriGas' trade secrets and other confidential and proprietary information, Defendants have been, and will continue to be, unjustly enriched.

94.     Allowing Defendants to retain the benefit of AmeriGas' trade secrets would be unjust.

95.     As a direct and proximate result of Defendants' wrongful conduct, AmeriGas has been, and will continue to, incur damages.

AmeriGas requests it be awarded damages in an amount to be proven at trial, including but not limited to, lost business and profits, commissions improperly earned by McBrayer, and such other and further relief as this Court deems proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**.

Plaintiff, AmeriGas Propane, Inc., requests judgment in favor of AmeriGas and against Defendants and that Plaintiff be awarded damages, including economic and non-economic damages in an amount to be proven at trial, moratory interest, exemplary damages pursuant to C.R.S. § 7-74-104, pre-judgment interest, attorney fees pursuant to C.R.S. § 7-74-105 and the Post-Employment Agreement, temporary and permanent injunctive relief against further misappropriation of trade secrets, equitable relief to remedy unjust enrichment, and any other and further relief the Court deems proper.


Dated: April 8, 2016

HALL & EVANS LLC


By: *s/ Adam B. Wiens*
Chad M. Knight
Adam B. Wiens
1001 Seventeenth Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax: (303) 628-3368

Pro Hac Vice Motion to be filed for:
James T. Hultquist, Esq.
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Phone: (312) 207-1000
Fax: (312) 207-6400

Plaintiffs Address
AmeriGas Propane, Inc.
PO BOX 965
Valley Forge, Pennsylvania 19482

## VERIFICATION

STATE OF ~~COLORADO~~ *Pennsylvania*       )
                                      ) ss.

COUNTY OF *Montgomery*                )

I, *James Marshall*, being of legal age, and being first duly sworn upon oath depose and state that the facts set forth in the foregoing VERIFIED COMPLAINT are true and correct to the best of my knowledge, information, and belief.

_____

Subscribed and sworn to before me this *8th* day of April, 2016, by *Carol A. Gorman*

Witness my hand and official seal.

[SEAL]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Carol A. Gorman, Notary Public
East Norriton Twp., Montgomery County
My Commission Expires May 6, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Public

My commission expires: _____*5-6-19*_____